UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:15-CR-72-PPS |
| | ) | |
| SEAN MICHAEL PENA, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>OPINION AND ORDER</u>**

This matter is before me on Pena's "Emergency Motion for a Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)" due to the COVID-19 epidemic. [DE 2595, 2636.] Pena is a 38 year old male who suffers from sleep apnea and obesity, and he is currently incarcerated at FCI Elkton in Lisbon, Ohio. In accordance with my order dated April 30, 2020, Federal Defender Matthew Soliday filed his appearance on behalf of Pena. Subsequently, Mr. Soliday filed a motion to withdraw which I granted. [DE 2607, 2608.] The government filed a response to Pena's pro se motion for reduction in sentence [DE 2632] and Pena filed another motion entitled emergency motion for a reduction of sentence, although this appears to be Pena's reply in support of his original motion. [DE 2636.]

Let's start by reviewing the procedural background of this case. On September 6, 2019, Pena pled guilty to Count One of the fifth superseding indictment, which charged him with conspiracy to engage in racketeering activity in violation of 18 U.S.C. § 1962(d) due to his involvement with the Latin Kings street gang. [DE 2263.] During the

sentencing phase, it came out that Pena had been a Latin King for over 18 years before his arrest in March 2017. [PSR at 1.] Pena was a major cocaine and marijuana supplier for the Latin Kings, and he supplied guns to the gang as well. [*Id.* at ¶¶ 14-49, 17, 26.]

On January 16, 2020, I sentenced Pena to 108 months imprisonment. [DE 2463.] Pena had three prior felony convictions, all involving firearms and drugs, one misdemeanor drug conviction, as well as three more convictions for driving and alcohol misdemeanors or infractions. [PSR, DE 2448, ¶¶ 74-79.] Pena's final offense level was 29, which included relevant conduct of 5-15 kilograms of cocaine and an enhancement for firearm possession, and his criminal history was category III. [*Id.* at ¶¶ 62-71, 131.] Pena is currently serving his sentence at FCI Elkton in Lisbon, Ohio, with a projected release date of December 24, 2024. [DE 2632 at 7.]

In support of his motion, Pena argues his obesity, sleep apnea, blindness in one eye, kidney failure seven years ago, and family history of cancer and diabetes, combined with the high rate of COVID-19 infection at FCI Elkton present extraordinary and compelling reasons justifying his release. He claims if he received 11 months at a halfway house, it would be about 36 months before he is eligible for release from FCI Elkton and "compassionate release would result in a slight reduction in the overall sentence in exchange for potentially saving Defendant's life." [DE 2636 at 1.]

The instant request is for compassionate release under the First Step Act. Pena bears the burden of showing he is entitled to compassionate release. *See United States v. Greenhut*, No. 2:18-CR-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31. 2020).

2

Compassionate release is "an extraordinary and rare event." *United States v. Mangarella*, 3:06-cr-151-FDW-DCK-3, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020).

Before I get into the merits of Pena's claim, I need to first look into the exhaustion requirement. The First Step Act provides that I can consider a motion directly from the defendant after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Pena requested release by the BOP and on April 27, 2020, the warden denied the request after health services staff reviewed his medical records. [DE 2632-1 at 1, 3-5.] Consequently, it seems that Pena has met the exhaustion requirement.

The First Step Act provides that the Court may reduce the term of imprisonment after considering the factors set forth in section 3553(a), if it finds that "extraordinary and compelling reasons warrant such a reduction" and that such a reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In other words, the compassionate release statute directs me to make three considerations: (1) whether a reduction is consistent with the factors listed in section 3553(a); (2) whether extraordinary and compelling reasons warrant a sentence reduction; and (3) whether a reduction would be consistent with the Sentencing Commission's policy statements. All three considerations weigh against release in this case.

3

The section 3553(a) factors, which are well-known by this point, include the nature and circumstances of the offense and history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and the kinds of sentences and sentencing range for the applicable category of offense committed. 18 U.S.C. § 3553(a). Before I address whether "extraordinary and compelling reasons" warrant a reduction in Pena's sentence, I will look to the factors set forth in section 3553(a), as I did in my initial sentencing of Pena. I stand by my reasoning of these factors that I set forth during Pena's sentencing:

> You joined this criminal organization when you were an adolescent. 14 years old, I think. I know you're 37, I think, now, and you've been a member of this Latin King organization a long time. And that organization, you know, I've learned firsthand, is up to a lot of bad things by way of violence and drug trafficking and sort of terrorizing neighborhoods as well as being in conflict with other gangs. You willingly became a member of that organization and stayed with it for a very long time. This wasn't a year or two kind of situation. And in that regard, it does seem, from reading the presentence report, that your principal responsibility or the things that you did in furtherance of the gang dealt with large-scale drug distribution; cocaine, marijuana. I know you stipulated the quantities here are between 5 and 15 kilograms of cocaine, which is a huge quantity of cocaine. And this wasn't as I said, a once or twice transaction. This is a drumbeat of drug dealing over the course of a long period of time. So that does have a really bad effect on the community, and you could probably speak to that better than anybody else in the courtroom.

[DE 2606, Sent. Tr., at 13-14.] In sentencing Pena, I also stressed his extensive criminal history, including multiple prior felony convictions, noting "it just doesn't seem like any prior sentences have deterred you at all" and "[a]ll the while . . . you were, of

4

course, engaging in the activity that brings you here today, this dealing with the Latin Kings." [*Id.* at 15.]

The expansive and serious nature of Pena's offense, including dealing massive quantities of drugs over a very long period of time and supplying guns to the Latin Kings does not weigh in favor of his early release. Moreover, I can't ignore his extensive criminal history. While I have no way of actually knowing, I believe that Pena could still pose a danger to the public. In April 2019, when Pena was at the Chicago MCC in pretrial detention, he was caught with possession of a 5.5 inch sharpened metal object in his locker, and sanctioned. [PSR ¶ 11.] Pena submits that he has been disciplined two times while incarcerated. [DE 2595 at 4.] Additionally, in February 2020, the BOP assigned Pena a "medium risk recidivism level." [DE 2632-4 at 1.] I just sentenced Pena in January 2020, about 5 months ago, and his projected release date is not until December 24, 2024. The Section 3553(a) factors of punishment, deterrence, and promotion or respect for the law do not warrant release in this case. *See, e.g., United States v. Keith Trevor Manuel*, 2:15-cr-72 (N.D. Ind., DE 2564) (denying codefendant Latin King's request for compassionate release based in part on the severity of the offense); *United States v. Urso*, No. 03-CR-1382 (NGG), 2019 WL 5423431, at *3 (E.D.N.Y. Oct. 23, 2019) (the court couldn't find that the defendant, a high-ranking mobster, no longer presented a danger to the community).

In turning to whether there are "extraordinary and compelling reasons [that] warrant such a reduction" and "that such a reduction is consistent with applicable

5

policy statements issued by the Sentencing Commission" 18 U.S.C. § 3582(c)(1)(A), I note that the pertinent policy statement is set forth in the United States Sentencing Guidelines (USSG) § 1B1.13. This would allow me to reduce Pena's sentence if I determined extraordinary and compelling reasons warrant the reduction, Pena is not a danger to the safety of any person or the community, and the reduction is consistent with the policy statement. USSG § 1B1.13. The Sentencing Commission also provided specific examples of what constitutes an extraordinary and compelling circumstance, which include, *inter alia*: the defendant is suffering from a terminal illness; the defendant is suffering from a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility; or other reasons as determined by the Director of the BOP. USSG § 1B1.13 cmt. n. 1.

Here, Pena's health issues and family medical history by themselves do not constitute extraordinary or compelling reasons to reduce his sentence. Pena suffers from obesity, sleep apnea, blindness in one eye, kidney failure seven years ago, and he claims he has a family history of cancer and diabetes. But prison medical records indicate that Pena is generally in good health and his ailments are well-controlled. [DE 2632-3 at 1-3, 6, 9, 12-14, 24, 29.] His health conditions do not impede his ability to provide self-care in the institution and therefore would not, by themselves, justify release. *See, e.g., United States v. Carpenter*, No. 2:14-cr-309-GEB, 2019 WL 7631396, at *2 (E.D. Cal. Dec. 23, 2019) (denying compassionate release where the records "evince that

6

[the prisoner's] medical conditions are not life-threatening and should not limit her self-care ability."); *United States v. Willis*, 382 F.Supp.3d 1185, 1188 (D. N.M. 2019) (quotation omitted) ("In exercising discretion under § 3553(a) and the First Step Act, most courts treat compassionate release due to medical conditions as . . . a rare event."); *United States v. Dusenbery*, No. 5:91-cr-291, 2019 WL 6111418, at *2 (N.D. Ohio Nov. 18, 2019) (denying compassionate release to defendant suffering from multiple conditions, including potential kidney failure, because they did not "impair his ability to provide self-care within the correctional facility.").

      The main question here is whether Pena's health, along with the enhanced risk of contracting COVID-19 at FCI Elkton, justifies release. Even considering Pena's obesity, sleep apnea, kidney failure seven years ago, and family history of cancer and diabetes in the midst of the COVID-19 pandemic, it still does not meet the extraordinary and compelling standard in this case. The CDC has now listed obesity – defined as a body mass index (BMI) of 40 or above – as a condition for people who are at higher risk for severe illness due to COVID-19. Https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. Prison records indicate that in March 2020, Pena weighted 419 pounds, so he is obese. [DE 2632-3 at 2.] But aside from Pena's obesity, his medical records do not indicate any respiratory issues, cancer, hypertension, cardiovascular issues, or diabetes. [DE 2632-3 at 1-2, 6, 9, 12-14, 24, 29.] His March 2020 medical visit showed that Pena has been exercising and eating a better diet, he has no work restrictions, and he has felt well with a normal temperature and

7

blood pressure. [*Id.*] For all of the other reasons listed in this opinion, I don't think Pena's obesity and other health issues justify compassionate release in this case. *See, e.g., Unites States v. Seymon*, No. 11-cr-10040-JES, 2020 WL 2468762, at *4 (C.D. Ill. May 13, 2020) (denying compassionate release despite defendant being obese); *United States v. Fry*, No. 11-1414 (PAM/KMM), 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (denying compassionate release for 66-year old man who is obese and has heart disease and high blood pressure, reasoning "[t]o merit such compassionate release, [the defendant] must show more than a mere speculation of the possibility of contracting the virus.").

I am well aware that there is a high rate of infection of COVID-19 at FCI Elkton. The government submitted that as of May 26, 2020, there were 169 confirmed cases (162 inmates and 7 staff members); 9 inmates have died, while 73 inmates and 46 staff members have recovered. [DE 2632 at 11.] While I am considering these numbers based upon the state of the record back at the end of May, I recognize that the rate of infection at FCI Elkton has probably changed since then, and indeed it might have gone down. Plus, there is the possibility that these numbers are not accurate.

Nevertheless, it is true that FCI Elkton has drawn national attention during the outbreak. In April 2020, certain inmates at Elkton filed an emergency habeas action seeking release due to the spread of COVID-19. *Wilson v. Williams*, No. 4:20-cv-00794, 2020 WL 1940882 (N.D. Ohio Apr. 22, 2020). The district court issued a preliminary injunction ordering FCI Elkton to "identify, within one (1) day[,] all members of the

8

[medically vulnerable] subclass" and to evaluate each subclass member's eligibility for transfer out of Elkton. *Id.* at *10. In response to the court's order, FCI Elkton provided a list of vulnerable inmates meeting the at risk criteria denominated by the district court, and Pena's name is on the list. [DE 2632 at 12.] The fact that Pena's name is on the list of medically vulnerable inmates does give me some pause. However, as I have stressed in this opinion, I need to consider factors other than just Pena's medical vulnerability to COVID-19 in analyzing whether release is appropriate. Additionally, the United States Court of Appeals for the Sixth Circuit recently vacated the district court's injunction, finding the inmates failed to show a likelihood of success on the merits for their Eighth Amendment claims against FCI Elkton. *Wilson v. Williams*, No. 20-3477, 2020 WL 3056217, at *6-11 (6th Cir. June 9, 2020).

Although Pena criticizes the institution's handling of the virus, FCI Elkton is engaged in strenuous efforts to protect inmates against the spread of COVID-19 including making soap widely available, cleaning and disinfecting more frequently, issuing protective face masks to all inmates and staff, implementing new screening and testing procedures, quarantining new inmates for 14 days, treating and isolating those inmates who have contracted it, and separating asymptomatic inmates who have tested positive or been in contact with symptomatic inmates. [Dees Decl., DE 2632-6.] While I am certainly sympathetic with Pena's situation and his concern about potentially becoming infected with COVID-19 from someone else at the facility, I do not think this is an extraordinary and compelling reason to justify release. *See United States v.*

9

*Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020) ("the mere presence of COVID-19 in a particular prison (or the BOP generally) cannot justify compassionate release - if it could, every inmate in that prison could obtain release."); *United States v. Collins*, No. 14-cr-30038, 2020 WL 2301217, at *2 (C.D. Ill. May 8, 2020) (denying motion for compassionate release, recognizing "the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that makes him more susceptible to the disease.").

Issues surrounding the COVID-19 pandemic are changing rapidly and new developments are occurring almost every day. At this point, based upon all the facts before me, I do not think that Pena's sentence should be reduced and he should be released. If factual developments warrant a reconsideration, Pena is free to exhaust his administrative remedies again, and file a new motion under § 3582(c)(1)(A).

## Conclusion

Despite the severity of the COVID-19 pandemic, Pena's "Emergency Motion for a Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)" [DE 2595, 2636] are DENIED. Pena has not shown the factors under section 3553(a) warrant release or that extraordinary and compelling reasons warrant such a reduction under § 3582(c)(1)(A).
SO ORDERED.

ENTERED: June 17, 2020.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT